**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

LATRECIA TURNER,                            :
                                            :
      Plaintiff,                            :
                                            :
v.                                          :        CASE NO.: 1:13-cv-113 (WLS)
                                            :
PARKER SECURITY AND                         :
INVESTIGATIVE SERVICES, INC.,               :
                                            :
      Defendant.                            :
_____ :

## ORDER

Presently pending before the Court is Defendant Parker Security and Investigative Services, Inc.'s Motion for Summary Judgment (Doc. 20).  For the following reasons, Defendant's Motion for Summary Judgment (Doc. 20) is **DENIED**.

## PROCEDURAL HISTORY

On July 8, 2013, Plaintiff Turner filed the Complaint in this sex discrimination and retaliation action under Title VII of the Civil Rights Act of 1964, as amended at 42 U.S.C. § 2000e, *et seq.*  (Doc. 1.)  On October 18, 2013, Defendant Parker Security and Investigative Services (Parker) answered the complaint after the Court approved a stipulation to an extension of time to answer.  (Docs. 7, 8.)  After discovery, Parker moved for summary judgment.  (Doc. 20.)  In support of summary judgment, Parker contends that Turner cannot establish a prima facie case of sex discrimination or retaliation.  (*See* Doc. 20.)  On July 14, 2014, Turner filed a response in opposition to Parker's Motion for Summary Judgment.  (Doc. 22.)  On July 28, 2014, Parker filed a reply.  (Doc. 26.)  Thus, the above-referenced motion is ripe for review.  *See* M.D. Ga. L.R. 7.3.1(a).

## SUMMARY JUDGMENT STANDARD

### I.  Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56 allows a party to move for summary judgment where no genuine issue of material fact remains and the party is entitled to judgment as a matter of law. "Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Maddox v. Stephens*, 727 F.3d 1109, 1118 (11th Cir. 2013).  "A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." *Grimes v. Miami Dade Cnty.*, 552 F. App'x 902, 904 (11th Cir. 2014) (citing *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)).  "An issue of fact is 'material' if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "It is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The movant bears the initial burden of showing, by reference to the record, that there is no genuine issue of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Barreto v. Davie Marketplace, LLC*, 331 F. App'x 672, 673 (11th Cir. 2009).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by demonstrating to the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *See Celotex*, 477 U.S. at 322-24.  Once the movant has met its burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts.' " *Matsuhita*, 475 U.S. at 586 (citations omitted).  Instead, the nonmovant must point to record evidence that would be admissible at trial. *See Jones v. UPS*

*Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (quoting *Macuba v. Deboer*, 193 F.3d 1316, 1322 (11th Cir. 1999)) (noting that hearsay may be considered on a motion for summary judgment only if it "could be reduced to admissible evidence at trial or reduced to admissible form"). Such evidence may include affidavits or declarations that are based on personal knowledge of the affiant or declarant. *See* Fed. R. Civ. P. 56(c)(4).

On a motion for summary judgment, the Court must view all evidence and factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict. *See Celotex*, 477 U.S. at 322-23; *Allen*, 121 F.3d at 646. However, the Court must grant summary judgment if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## II.    Local Rule 56

Local Rule 56 requires the following:

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise inappropriate.

M.D. Ga. L.R. 56. Here, Parker properly filed a summary judgment motion with a statement of undisputed facts, as required by the Federal Rules of Civil Procedure and the Local Rules of this Court. (Doc. 21.) Likewise, Turner filed the proper response to Parker's statement of material facts. (*See* Doc. 23.) Having established the applicable standards, the Court will proceed to the facts.

## RELEVANT FACTUAL BACKGROUND

The following facts are derived from the Complaint (Doc. 1); Parker's Answer (Doc. 7); Parker's Statement of Undisputed Facts (Doc. 21); and Turner's Response to Parker's Statement of Undisputed Material Facts (Doc. 23); and the record in this case. Where relevant, the factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are

construed in a light most favorable to Parker as the nonmovant.  *See* Fed. R. Civ. P. 56; *Celotex*, 477 U.S. at 322-23.

Parker Security and Investigative Services, Inc. (Parker) is a private company that provides security services to various businesses and government agencies. One of Parker's customers is Southern Ag Carriers, Inc. (Southern Ag).  Plaintiff Latrecia Turner was employed by Parker as a security guard at a Southern Ag facility in Blakely, Georgia. Turner was employed by Parker from on or about May 23, 2011 to on or about January 14, 2012. When Turner applied for her job at Parker, she indicated on the job application that she had reliable transportation.

On January 6, 2012, Shenita Prizzie, Turner's supervisor, called Parker District Manager Ricky Reynolds and told him that she had a problem with Turner using a cell phone on the job site, which was against company policy. Prizzie went on to inform Reynolds that Turner informed her that she was using a cell phone to discourage two Southern Ag drivers from sexually harassing her.  Reynolds told Prizzie to have Turner write a statement. On January 9, 2012 Turner wrote a statement explaining why she was using a cell phone at work and complaining about the conduct of two Southern Ag drivers. That same day Turner met with Reynolds and discussed her complaints with him.  Reynolds then spoke to Todd Griffin, Director of Operations at Southern Ag, about Turner's complaints about the two Southern Ag drivers, Antonio Taylor and John Richards. After denying Turner's allegations about their behavior, Taylor and Richards told Southern Ag that Turner had used her cell phone at work and that they had heard of an instance where Turner's boyfriend came to the Southern Ag facility in Blakely and confronted another driver.

Southern Ag communicated to Parker that Turner was banned from returning to the Blakely facility because the Southern Ag drivers had denied the allegations and Southern Ag did not want Turner on their premises. Southern Ag did not inform Parker about the allegations regarding Turner's boyfriend visiting the facility.  Reynolds did not learn of these until after Turner's employment with Parker ended. On or about January 10, 2012, Reynolds informed Turner that she was being transferred to a Parker customer site in Cuthbert, Georgia, which is thirty miles away from Blakely. The Cuthbert position offered to Turner

was also a security officer job with the same responsibilities as Turner's Blakely position. The Cuthbert facility was the next closest Parker facility to Blakely. Turner rejected the transfer because she did not have reliable transportation to Cuthbert since she shared a car with her sister. Upon her rejecting the transfer, Parker terminated Turner. In April 2012, Reynolds testified at a Georgia Department of Labor hearing regarding Turner's application for unemployment benefits.

## ANALYSIS

### I.   Turner's Sex-Based Discrimination or Sexual Harassment Claim

Title VII makes it unlawful for employers to discriminate "with respect to [an employee's] compensation, terms, or privileges of employment" on the basis of "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). When a plaintiff seeks to prove sex discrimination through circumstantial evidence, as Turner does in the instant case,[1] the Court is guided by the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Cobb v. City of Roswell, Ga.*, 533 F. App'x 888, 893 (11th Cir. 2013) (citing *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999)). Under that framework, in order to establish a prima facie case of sex discrimination under Title VII, a plaintiff must show that she: 1) is a member of a protected class; 2) was qualified for the position; 3) suffered an adverse employment action; and 4) was treated less favorably than similarly situated employees outside of her protected class, or was replaced by someone outside of her protected class. *Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 842 (11th Cir. 2000). If the claimant establishes a prima facie case of discrimination, a presumption of discrimination is created, and the burden shifts to the employer to offer a legitimate, nondiscriminatory reason for the adverse employment action to rebut the presumption. *Sims v. MVM, Inc.*, 704 F.3d 1327, 1332 (11th Cir. 2013). If the defendant produces such evidence, the plaintiff must demonstrate that the employer's stated reason is pretext for discrimination. *Kragor v. Takeda Pharms. Am., Inc.*, 702 F.3d 1304, 1308 (11th Cir. 2012).

---

[1] *See Merritt v. Dillard Paper Co.*, 120 F.3d 1181, 1189 (11th Cir. 1997) (quoting *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n.6 (11th Cir. 1987)) (defining direct evidence as "evidence, which if believed, proves existence of fact in issue without inference or presumption").

Although Title VII does not mention sexual harassment, the Supreme Court and Eleventh Circuit have long held the phrase "terms, conditions, or privileges of employment" prohibits it. *Mendoza v. Borden, Inc.*, 195 F.3d 1239, 1244 (11th Cir. 1999) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). To establish a prima facie case of sexual harassment, the Eleventh Circuit requires a plaintiff to establish the following:

> (1) that she belongs to a protected group; (2) that she has been subjected to unwelcome sexual harassment; (3) that the harassment was based on her sex; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that a basis for holding the employer liable exists.

*Husley v. Pride Rests., LLC*, 367 F.3d 1238, 1244 (11th Cir. 2004).

In its Motion for Summary Judgment, Parker argues that Turner has not established a *prima facie* case for sexual harassment but also argues that Turner has simply not pleaded a claim of sex-based discrimination or sexual harassment. (Doc. 20 at 6-12.) In her Response, Turner did not challenge this argument or provide any arguments in support of a sex discrimination nor sexual harassment claim; Turner's Response focuses solely on a retaliation claim. Count One of Turner's complaint states, "The foregoing actions of defendant in transferring and terminating Turner because she complained about sexual harassment constitute unlawful discrimination on account of the Turner's sex, female, under Title VII." This is a retaliation claim. Nowhere in Count One does Turner allege that she was subject to sexual harassment or other sex-based discrimination based on any action other than Parker's transferring and terminating her because she complained about sexual harassment. The Court finds, therefore, that Count One and Count Two are both Title VII retaliation claims and will apply only Title VII retaliation law in analyzing Parker's Motion for Summary Judgment.

## II.   Turner's Retaliation Claim

The retaliation clause, or opposition clause, to Title VII makes it unlawful "for an employer to discriminate against any of his employees . . . because [that employee] opposed any practice made an unlawful employment practice" by Title VII. *Dixon v. The Hallmark Cos., Inc.*, 627 F.3d 849, 856 (11th Cir. 2010) (citing 42 U.S.C. § 2000e-3(a)). "Examples of

unlawful employment practices include differentiating compensation and benefits or classifying employees on the basis of race, sex, or religion." *Id.* (citing 42 U.S.C. § 2000e-2(a)).  To state a claim for retaliation under Title VII, a plaintiff must allege the following elements: "(1) she participated in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there is a causal connection between the participation in the protected activity and the adverse action." *Pipkins v. City of Temple Terrace*, 267 F.3d 1197, 1201 (11th Cir. 2001).

Under *McDonnell Douglas* burden-shifting, the plaintiff bears the initial burden of establishing her *prima facie* case. *Gardner v. Aviagen*, 454 F. App'x 724, 728 (11th Cir. 2011) (citing *McDonnell Douglas*, 411 U.S. at 802–03).  The burden then shifts to the defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action.  *Id.*  If the defendant does so, the plaintiff must make a showing that the nondiscriminatory reason was pretextual.  *Id.*

Here, Parker argues that Turner has not established any of the elements of a *prima facie* case for retaliation. The Court will address each of the elements in turn as well as Parker's proffered legitimate, non-retaliatory reason.

### A.  Participation in Protected Activity

"Statutorily protected expression includes internal complaints of sexual harassment to superiors as well as complaints lodged with the EEOC." *Pipkins v. City of Temple Terrace, Fla.*, 267 F.3d 1197 (11th Cir. 2001) (citing Rollins v. Fla. Dep't of Law Enforcement, 868 F.2d 397, 400 (11th Cir.1989)).  A plaintiff must demonstrate that she had a "good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956 (11th Cir. 1997) (citing *Rollings*, 868 F.2d at 400)).  Thus, a plaintiff must show both that she *subjectively* believed the practices were unlawful and that this belief was *objectively* reasonable. *Id.* However, a plaintiff is not required to prove that the underlying discriminatory conduct that she opposed was actually unlawful in order to prove that her belief was objectively reasonable. *Id.*

Here, the Court finds no genuine issue of material fact as to whether Turner engaged in protected activity. After she was confronted by her supervisor, Shenita Prizzie, about

using her cell phone at work, Turner reported to Prizzie her complaints regarding the two Southern Ag drivers. Turner also made written and oral complaints to Ricky Reynolds. Turner reported in her written statement that one driver, Antonio Turner "danced in a vulnerable [sic] way," referenced his "pretty eyes" and "'donk' meaning big butt" to her, put his ear to her cell phone to hear her conversation, and demanded that she call him "mister." (Doc. 21-3 at 1.) Turner also reported that another driver, John Richards, "gets very close to me as if he is about to kiss me at anytime;" grabbed her hand "romantically" instead of a pen; followed her into the guard shack even though she asked him not to, closing the door behind him."

Furthermore, in her deposition, Turner stated that the drivers: "daily and repeatedly grabb[ed] their privates, [made] sexual gestures with their tongue[s], ask[ed] her when she was going to let them 'taste it' and when she was going to let them 'sex her,' [told] her other men couldn't do it like them . . . ." (Doc. 22 at 3 (citing Doc. 21-3).) Although Turner did not report this behavior to Parker, the Court finds that it still a finding that she subjectively believed the conduct was unreasonable and that this belief was objectively reasonable. *See Mulkey v. Bd. Of Com'rs of Gordon Cnty.*, 488 Fed. App'x 384, 389-90 (11th Cir. 2012) (considering a plaintiff's affidavit statements regarding his belief that conduct was unlawful in addition to the statements the plaintiff made to his employer in his complaint).

Turner has provided evidence that she subjectively believed these acts were unlawful. Turner stated in her deposition that she had a conversation with Prizzie prior to January 6, 2012 about the drivers' behavior. Also, Turner has presented uncontroverted evidence that she used her cell phone at work in an attempt to avoid interactions with these drivers. Based on this evidence, the Court finds that Turner subjectively believed the truck drivers' behavior was unlawful.

Parker argues, "the conduct described in Turner's statement does not objectively rise to the level of unlawful conduct." (Doc. 20 at 15; *see also* Doc. 26 at 2-3.) However, the Court reiterates that in order for a plaintiff to establish that her protected activity was objectively reasonable, she need not prove that the discriminatory acts she complains of were unlawful. Here, Turner alleges that the two drivers committed a variety of acts, including physically

grabbing her hand and making explicit sexual comments, that, taken together, could reasonably be perceived as unlawful. The Court finds that Turner was reasonable in believing the behavior she complained of in her written statement and deposition was unlawful.

### B. Materially Adverse Employment Action

Parker also argues that Turner has not demonstrated that she suffered an adverse employment action. (Doc. 20 at 15-18.) In the retaliation context, a materially adverse employment action is one that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). A fact finder is "not required to find that the challenged actions were related to the terms or conditions of employment," which would be the standard for a discrimination claim. *Id.* at 70.   Courts consider whether a reasonable person in the employee's unique circumstances would perceive the action as materially adverse. *Id.* at 69 ("A schedule change in an employee's work schedule may make little difference to many workers, but may matter enormously to a young mother with school-age children.").  The Eleventh Circuit has held that a transfer can be an adverse employment action "if it involves a reduction in pay, prestige, or responsibility." *Hinson v. Clinch Cnty., Ga. Bd. of Educ.*, 231 F.3d 821, 829 (11th Cir. 2000).  Finally, a number of courts have held that a lateral transfer that increases an employee's commute time but creates a mere inconvenience for the employee and "is not objectively serious and tangible enough to meet the threshold of substantiality." *Burnette v. Northside Hosp.*, 342 F.Supp.2d 1128, 1136-37 (N.D. Ga. 2004) (citing a number of cases holding accordingly).

Here, the Court finds that the Cuthbert position offered to Turner did not involve a reduction in pay, prestige, or responsibility. Turner argues, however, that an employee *in her circumstances* would reasonably perceive the forced transfer as a materially adverse employment action.  Turner was sharing a car with her sister, an arrangement that allowed her to get to and from the Blakely facility but would not have allowed her to travel to Cuthbert. Turner argues that her relatively low income, $7.40 an hour, was insufficient to allow her to purchase a car or afford other means of transportation to Cuthbert. To an employee with reliable transportation, a forced transfer to the Cuthbert facility would not

have been a materially adverse employment action. However, to an employee in Turner's circumstances who lacked reliable transportation to traverse thirty miles one way in Southwest Georgia, an area with little to no public transportation, the forced transfer could reasonably be perceived as a materially adverse employment action sufficient to dissuade that employee from making or supporting a charge of discrimination.

The Court finds that Defendant Parker was not informed of Turner's lack of reliable transportation until the Cuthbert transfer was offered. Turner stated on her employment application that she had reliable transportation. When Reynolds called to inform Turner about the transfer, Turner then communicated that she would need to speak with her sister about whether arranging transportation would be possible. The Court finds, however, that Parker's making the transfer mandatory after learning that Turner did not have reliable transportation constituted a materially adverse employment action.

### C.  Causal Connection

In a retaliation claim, "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *EEOC v. Reichold Chem, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993). Here, Turner was forced to transfer to another job site after Southern Ag, a customer of Parker, demanded that she not return to its Blakely facility. The reason given to Parker for Southern Ag's demand was that Southern Ag's drivers had denied Turner's complaints of sexual harassment. No other reason was provided to Parker prior to its forcing Turner to transfer. Parker, through its District Manager, Reynolds, then communicated to Turner that she must transfer to another facility and that there was a position available in Cuthbert. The Court finds that Turner has demonstrated a causal connection between the transfer and Turner's protected activity.

### D.  Legitimate, Non-retaliatory Reason

The Court finds that Turner has established a *prima facie* case for retaliation in violation of Title VII. "Once the prima facie case is established, the employer must proffer a legitimate, non-retaliatory reason for the adverse employment action. The plaintiff bears the ultimate burden of proving by a preponderance of the evidence that the reason provided by

the employer is a pretext for prohibited, retaliatory conduct." *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998).

Defendant Parker asserts that it had two legitimate, non-retaliatory reasons for transferring Turner –meeting the demand of a customer and protecting Turner's safety. (Doc. 20 at 19.) Parker argues that it had no choice but to transfer Turner because it could not fire the Southern Ag drivers. Parker argues, essentially, that its choices were to either risk losing Southern Ag as its customer by defying its order not to allow Turner to return to the Blakely facility and risking Turner's safety by allowing her to remain in a workplace with individuals against whom she had lodged complaints of sexual harassment or to force Turner to transfer to the next nearest facility.

"Customer preference" is not a legitimate defense under Title VII. *Platner v. Cash & Thomas Contractors, Inc.*, 908 F.2d 902, 905 n. 5 (11th Cir. 1990); *see also Diaz v. Pan Am. Wordl Airways, Inc.*, 442 F.2d 385, 388-89 (5th Cir. 1971), *cert. denied* 404 U.S. 950 (1971).[2]  "An employer may not illegally discriminate simply because some third party urges or pressures him to do so." *Platner*, 908 F.2d at 905. Thus, if Parker forced Turner's transfer solely because of Southern Ag's desire to illegally retaliate against her, Parker did not have a legitimate, non-retaliatory reason for forcing Turner's transfer.  Parker argues that Southern Ag had a legitimate, non-retaliatory reason for banning Turner because of allegations regarding her boyfriend visiting the facility. However, in his deposition, Reynolds stated that he was not aware of these allegations until Turner's unemployment compensation hearing months after Turner was terminated. (Doc. 24-1 at 68.) Therefore, at the time of Turner's forced transfer, Parker could only have relied on what it knew to be Southern Ag's desire to retaliate.

However, the Supreme Court has held that "an employer can avoid liability if it can prove that it would have made the same disputed employment decision in the absence of the alleged bias." *Pennington v. City of Huntsville*, 261 F.3d 1261, 1268 (11th Cir. 2001). This "mixed motive" defense applies in Title VII retaliation cases. *Id.*  Parker has asserted another reason for transferring Turner –protecting her from her accused harassers. Thus, the Court,

[2] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

11

next, inquires as to whether Parker has established that it would have forced Turner's transfer even if Southern Ag had not banned Turner from its facility in order to protect her from future harassment.

The Court finds that a genuine issue of material fact remains as to whether Parker would have forced Turner's transfer solely for the purpose of preventing future sexual harassment. Reynolds testified at Turner's Georgia Department of Labor unemployment benefits hearing that the sole reason he forced Turner to transfer was for her "well-being" and "to stop the harassment." (Doc. 24-3 at .) At that hearing, Reynolds did not mention that Southern Ag had barred Turner from its facility. (*See Id.*) In her deposition, Turner did not state the reason Reynolds gave for her forced transfer.

However, in Reynolds deposition, Reynolds mentioned nothing about transferring Turner to prevent sexual harassment. In fact, Reynolds stated that he did not investigate Turner's allegations beyond reading her complaint and speaking to Southern Ag officers about it but that he nevertheless concluded that Turner's allegations were unfounded, suggesting that this would *not* have been a reason for forcing Turner's transfer. (Doc. 24-1 at 60.)  Reynolds further testified that, to his knowledge, Parker did not explore possibilities other than forcing Turner's transfer, such as asking Southern Ag to conduct a more thorough investigation, requesting that Southern Ag provide sexual harassment training to its drivers, or scheduling Turner for a different shift so that she did not have to encounter her alleged harassers. (*Id.* at 46-47.)  This also raises a question as to whether Parker's was concerned enough with the sexual harassment allegations that it would mandate Turner's transfer in order to protect her.

The Court finds, therefore, that a credibility issue exists as to Reynolds' purported reasons for terminating Turner and a genuine issue of material fact remains as to whether Defendant Parker would have forced Turner's transfer even if Parker had not banned her from its facility.  Having failed to establish a factually undisputed legitimate, non-retaliatory reason for Turner's forced transfer, Parker is not entitled to judgment as a matter of law.

## <u>CONCLUSION</u>

For the foregoing reasons, Parker's Motion for Summary Judgment (Doc. 20) is **DENIED.**

**SO ORDERED**, this <u>10th</u> day of November, 2014.

/s/ W. Louis Sands
**W. LOUIS SANDS, JUDGE**
**UNITED STATES DISTRICT COURT**

13